**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

CARISSA PERONIS, Administratrix of    :    Civil Action No:
the Estate of KENDALL PERONIS,        :
deceased, and MATTHEW FRITZIUS,    :
                                            :    ***ELECTRONICALLY FILED***
           Plaintiffs,             :
                                            :
     v.                                :
                                            :
UNITED STATES OF AMERICA;         :
PRIMARY HEALTH NETWORK –        :
BEAVER FALLS PRIMARY CARE;       :
VALLEY MEDICAL FACILITIES, INC.    :
t/d/b/a HERITAGE VALLEY            :
PEDIATRICS; VALLEY MEDICAL       :
FACILITIES, INC. t/d/b/a HERITAGE    :
VALLEY BEAVER; KEVIN C. DUMPE,   :
M.D., and HILARY JONES, M.D.        :

               Defendants.

_____

<u>**COMPLAINT**</u>

     Plaintiffs, Carissa Peronis, Administratrix of the Estate of Kendall Peronis, deceased, and

Matthew Fritzius, by and through their attorneys of record, Harry S. Cohen & Associates, PC, by

Harry S. Cohen, Esquire bring this Complaint against the above-named Defendants and in support

thereof allege as follows:

<u>**NOTICE**</u>

     1.      On January 27, 2016, Plaintiff Carissa Peronis, Administratrix of the Estate of

Kendall Peronis, deceased, served the Department of Health and Human Services Office of the

General Counsel with an executed Standard Form 95 providing notice to the United States

Government of this claim.

2.      On May 11, 2016, the Office of General Counsel of the Department of Health and Human Services sent a letter to Plaintiffs' Counsel denying Plaintiff Carissa Peronis, Administratrix of the Estate of Kendall Peronis, deceased's claim, notifying the undersigned to file suit against the United States in the appropriate Federal Court District Court within six (6) months from the date of mailing of the determination pursuant to 28 U.S.C. §2401(b).

3.      On May 24, 2016, Plaintiff Matthew Fritzius served the Department of Health and Human Services Office of the General Counsel with an executed Standard Form 95 providing notice to the United States Government of this claim.

4.      On June 20, 2016, the Office of General Counsel of the Department of Health and Human Services sent a letter to Plaintiffs' Counsel denying Plaintiff Matthew Fritzius's claim, notifying the undersigned to file suit against the United States in the appropriate Federal Court District Court within six (6) months from the date of mailing of the determination pursuant to 28 U.S.C. §2401(b).

## JURISDICTION

5.      This action is brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §2671.

6.      Since the Plaintiffs submitted an administrative claim to the United States Department of Health and Human Services, which denied the claim, all conditions, precedent to a Federal Tort Claim, have been properly met.

7.      Venue is properly within this district under 28 U.S.C. §1402(b) as the acts complained of occurred in the Western District of Pennsylvania.

8.      The claims herein are brought against the United States of America pursuant to the Federal Tort Claims Act (28 U.S.C. §2671, et seq.) and 28 U.S.C. §1346(b)(1) for money damages as compensation for personal injuries that were caused by the negligent and wrongful

acts and omissions of the employees of the United States Government while acting within the scope of their offices and employment, under circumstances where the United States, if a private person, would be liable to the Plaintiffs in accordance with the laws of the state of Pennsylvania.

9.      While the claim against the United States of America is based on Federal Statute, this court has ancillary jurisdiction to hear the claims against all of the other defendants since the claims are all substantially related to the claim that is within this court's jurisdiction, and there is a logical relationship to the operative facts of all the claims.

## **PARTIES**

10.     Plaintiff Carissa Peronis ("Mom") is an adult individual currently residing at 31 Shadyside Trailer Court, New Brighton, Beaver County, Pennsylvania 15066.

11.     Plaintiff Matthew Fritzuius ("Dad") is an adult individual currently residing at 31 Shadyside Trailer Court, New Brighton, Beaver County, Pennsylvania 15066.

12.     Kendall Peronis ("Plaintiff's Decedent" or "Decedent" or "Kendall") died on October 13, 2014 at Heritage Valley Beaver Hospital in Beaver County, Pennsylvania, 15066.

13.     On July 20, 2015, the Register of Wills of Beaver County, Pennsylvania appointed Plaintiff Carissa Peronis as the Administratrix of the Estate of Kendall Peronis, Deceased at Estate Number 0415-00742.

14.     Plaintiffs bring this action as parents and Administratrix of the decedent's estate and on behalf of all the potential claimants under the Wrongful Death and Survival Acts.  The parents Carissa Peronis and Matthew Fritzius are the sole statutory heirs of Kendall Peronis, Deceased.

15.     Defendant United States of America (hereinafter "United States") has waived sovereign immunity pursuant to the Federal Tort Claims Act.

16.     Defendant United States of America is the grantor of the U.S. Department of Health and Human Services, which operates a federally qualified health care center, Defendant Primary Health Network – Beaver Falls Primary Care ("Primary Care") which is engaged in providing health care which at all times pertinent hereto operated a business located at 1302 Seventh Avenue, Beaver Falls, Beaver County, Pennsylvania, 15010.  Plaintiffs are asserting a professional liability claim against this Defendant.

17.     Defendant Valley Medical Facilities, Inc. t/d/b/a/ Heritage Valley Pediatrics, Inc. ("HV Pediatrics") is a corporation or some other form of business entity, engaged in providing health care, duly organized and existing under the laws of the Commonwealth of Pennsylvania which, at all times pertinent hereto, operated a business providing health care located at located at 250 College Ave., Beaver, Beaver County, Pennsylvania, 15009.  Plaintiffs are asserting a professional liability claim and a vicarious liability claim against this Defendant.

18.     Defendant Valley Medical Facilities, Inc. t/d/b/a Heritage Valley Beaver ("Hospital") is a hospital, corporation or some other form of business entity, engaged in the provision of health care, duly organized and existing under the laws of Commonwealth of Pennsylvania, which at all times material hereto, operated a healthcare business located at 1000 Dutch Ridge Road, Beaver, Beaver County, Pennsylvania 15009.  Plaintiffs are asserting a professional liability claim and a vicarious liability claim against this Defendant.

19.     Defendant Kevin Dumpe, M.D. ("Dr. Dumpe") is and was at all times material hereto a physician duly licensed to practice medicine in the Commonwealth of Pennsylvania, who specializes in the area of obstetrics, with his principal place of business located at 1302 Seventh Avenue, Beaver Falls, Beaver County, Pennsylvania, 15010 and an employee of a

4

federally qualified health center. Plaintiffs are asserting a professional liability claim against this Defendant.

20.     Defendant Hilary Jones, M.D. ("Dr. Jones") is and was at all times material hereto a physician duly licensed to practice medicine in the Commonwealth of Pennsylvania, who specializes in the area of pediatrics, with her principal place of business located at 250 College Ave., Beaver, Beaver County, Pennsylvania, 15009. Plaintiffs are asserting a professional liability claim against this Defendant.

21.     At all times material hereto, Dr. Dumpe was an employee of Primary Care.

22.     At all times material hereto, Dr. Dumpe was an actual agent, ostensible agent and/or servant of Primary Care.

23.     At all times material hereto, Dr. Dumpe was an employee of Hospital.

24.      At all times material hereto, Dr. Dumpe was an actual agent, ostensible agent and/or servant of Hospital.

25.     At all times material hereto, Dr. Jones, was an employee of Defendant HV Pediatrics.

26.     At all times material hereto, Dr. Jones was a servant, actual agent and ostensible agent of Defendant HV Pediatrics.

27.     At all times material hereto, Dr. Jones, was an employee of the Defendant Hospital.

28.     At all times material hereto, Dr. Jones was a servant, actual agent and ostensible agent of Defendant Hospital.

29.     At all times material hereto, Defendant Primary Care acted by and through its agents, servants, employees and/or ostensible agents, including Dr. Dumpe, who acted within the course and scope of their employment, duty and authority.

30.     At all times material hereto, Defendant HV Pediatrics acted by and through its agents, servants, employees and/or ostensible agents, including Dr. Jones, Shira Goldstein, MD and Bradley Heiple, DO, who acted within the course and scope of their employment, duty and authority.

31.     At all times material hereto, Defendant Hospital acted by and through its agents, servants, employees and/or ostensible agents, including Dr. Dumpe, Dr. Jones, Shira Goldstein, MD and Bradley Heiple, DO, who acted within the course, scope and authority of their employment and agency.

## FACTS

32.     Mom became pregnant with her first child and came under the prenatal care of Dr. Dumpe and Defendant Primary Care with an estimated date of confinement of October 12, 2014.

33.     On February 12, 2014, Mom underwent her only ultrasound which reported a normal 7 week 6 day old embryo.

34.     After an unremarkable and normal prenatal course, on October 12, 2014 at about 2:00 p.m., Mom presented to the Hospital in labor for the delivery of her child reporting contractions and that she began leaking fluid at about 10:00 a.m.   Spontaneous rupture of membranes was confirmed.

35.     The OB patient profile record noted Mom's height was 5' and her weight was 123 pounds.

36.     At 5:45 p.m., Dr. Dumpe dictated a history and physical report noting that Mom was at 40 weeks estimated gestational age with an uncomplicated prenatal course and that the fetus was in a vertex position.

37.     At 6:30 p.m., Dr. Dumpe ruptured the fore bag of the membranes revealing meconium which Nurse Ash later documented as light green colored amniotic fluid.

38.     At 9:44 p.m., the fetal monitor showed the fetal heart rate had decelerated to about 90 beats per minute.

39.     At 9:45 p.m., Nurse Hendershot noted variable decelerations on the fetal monitor strips which she later documented.

40.     At 10:15 p.m., the fetal monitor showed accelerations as noted by Nurse Hendershot but this was the final occurrence of any reassuring fetal heart rate accelerations prior to delivery.

41.     From about 10:30 p.m. until about 11:00 p.m., the fetal monitor strips showed recurrent variable decelerations.

42.     At 11:05 p.m., the fetal monitor showed early decelerations which were later documented by Nurse Hendershot who provided a verbal report to Dr. Dumpe at 11:25 p.m.

43.     From about 11:20 p.m. to about 11:40 p.m. the fetal monitor showed recurrent variable decelerations.

44.     At 11:55 p.m., the fetal monitor showed early decelerations which as later documented by Nurse Hendershot.

45.     From about 12:10 a.m. to about 1:20 a.m. the fetal monitor showed recurrent variable decelerations.

46.     From about 2:40 a.m. through 2:50 a.m., the fetal monitor showed recurrent variable decelerations.

47.     At 2:50 a.m., Mom's temperature was 100.2 degrees as was later documented by Nurse Hendershot.

48.     At 3:35 a.m., Dr. Dumpe instructed that Mom should begin pushing after Nurse Hendershot notified Dr. Dumpe that Mom had a completely dilated cervix and had progressed to the second stage of labor.

49.     From about 4:00 a.m. until delivery the fetal monitor showed a category 3 tracing.

50.     At 4:50 a.m., Dr. Dumpe reviewed the fetal monitor strips.

51.     Mom had been pushing for an hour when Dr. Dumpe noted an arrested descent at 3+station but Dr. Dumpe allowed Mom to push for another 30 minutes.

52.     No attempt was made to notify a pediatrician regarding the imminent delivery or the condition of the fetus.

53.     At 5:09 a.m., Dr. Dumpe applied the vacuum and there was moderate non-particulate meconium fluid at delivery of the vertex.

54.     At 5:20 a.m. Kendall was delivered; her body was pink but her extremities were blue as noted by Nurse Hendershot.

55.     Dr. Dumpe did not bulb suction until after the shoulders were delivered as he later documented in his operative delivery report.

56.     At delivery, Kendall required resuscitation including suctioning of meconium and administration of oxygen.

57.     Kendall's APGAR scores were noted to be 6 at 1 minute and 8 at 5 minutes.

58.    At 5:45 a.m., Dr. Dumpe documented the delivery of an 8 pound 7 oz. viable female infant.

59.    Dr. Dumpe noted that umbilical cord blood was obtained at delivery but he did not order cord blood gasses.

60.    There was no pediatrician present at delivery, no pediatrician was notified about the delivery or Kendall's condition, and Kendall was permitted to remain in Mom's room after delivery.

61.    Dr. Dumpe, the nursing staff and/or the health care providers were aware of Kendall's respiratory condition but allowed Kendall to remain in Mom's room after delivery and did not immediately transfer her to the nursery or NICU, notify a pediatrician or the nursery nurses.

62.    At 5:44 a.m., family practice resident, Dr. Goldstein, who did not examine Kendall, wrote routine admission orders admitting Kendall to the nursery.

63.    No nurse assessed Kendall's condition until 7:00 a.m. when Nurse McCrory noted abnormal vital signs of: temperature of 99.6, heart rate 132, respiratory rate 44 and pulse oximetry 81%.

64.    From birth at 5:20 a.m. until 7:20 a.m., no pediatrician or resident was notified about Kendall's condition.

65.    At 7:20 a.m., Nurse McCrory notified pediatrician Dr. Jones and Manager/Supervisor Peggy Brooks of Kendall's condition.

66.    At 7:25 a.m., an initial newborn nurse's assessment documented Kendall's abnormal respiratory symptoms of grunting, nasal flaring, substernal/subcostal retractions,  and

use of accessory muscles as well as assessing that Kendall was fussy, hypotonic, in pain, had not voided and her color was dusky with acrocyanosis.

67.     At 7:25 a.m., the residents were contacted related to Kendall's dusky appearance and GFR as noted by Nurse McCrory.

68.     At 8:00 a.m., Dr. Jones performed the first physician assessment and/or examination of Kendall following her delivery. Dr. Jones noted that there had been meconium fluid at delivery, Kendall was stained with meconium, and that Kendall had been brought to the nursery in mild respiratory distress.

69.     At about 8:15 a.m., despite Kendall's condition, Dr. Jones left the nursery and left Kendall's bedside.

70.     At 8:20 a.m., Dr. Jones was arranging transfer to West Penn via air transport and ordered tests and an IV.

71.     At 8:30 a.m., Dr. Heiple ordered an IV, IV antibiotics, and blood tests but did not examine or attend to Kendall.

72.     At 8:52 a.m. a chest x-ray showed findings consistent with meconium aspiration and/or neonatal pneumonia.

73.     At about 9:00 a.m., a physician's progress note documented a diagnosis of meconium aspiration.

74.     Dr. Jones returned to the nursery around 9:00 a.m. to find that Kendall's condition had deteriorated.

75.     Dr. Jones was not in the nursery and/or was not attending to Kendall for about 45 minutes between 8:15 a.m. and 9:00 a.m. while Kendall's condition became worse.

76.     Dr. Jones waited until 9:40 a.m. to intubate Kendall.

77.     At 9:40 –9:45 a.m., the West Penn transport team arrived.

78.     Kendall's oxygen saturations were low and the West Penn team ordered surfactant and nitrous oxide.

79.     At about 10:50 a.m., Kendall's heart rate dropped and chest compressions were initiated.  The West Penn team continued resuscitation efforts but Kendall developed pulmonary hemorrhage and could not sustain her heart rate.

80.     At 11:40 a.m., Kendall was pronounced dead at about 6 hours of life.

81.     The prolonged delay in delivery, the lack of proper treatment at delivery and the prolonged delay in treating Kendall post-delivery led to Kendall's death from meconium aspiration and sepsis.

82.     Dr. Jones signed Kendall's death certificate noting the causes of death as: cardiac arrest due to pulmonary hemorrhage due to pulmonary hypertension due to meconium aspiration. Dr. Jones also noted that the meconium aspiration occurred at 5:20 a.m., pulmonary hypertension occurred at 9:00 a.m., cardiac arrest occurred at 10:50 a.m., and pulmonary hemorrhage occurred at 10:55 a.m.

83.     Pathologist Dr. Tae C. Min, an employee and agent of the Defendant Hospital, performed an autopsy reporting that the causes of Kendall's death were neonatal sepsis from E. coli and acute bronchopneumonia associated with massive aspiration of meconium.

84.     Dr. Jones was the attending pediatrician in charge of Kendall's care at the Defendant Hospital and was in charge of supervising the pediatric residents.

85.     The pediatric residents, Dr. Goldstein and Dr. Heiple, were responsible for and cared for Kendall during her admission to the Defendant Hospital.

86.     As a direct and proximate result of the negligence of the Defendants, as set forth above and herein, Plaintiff's Decedent suffered the following injuries and damages:

      (a)    Death;

      (b)    Neonatal sepsis;

      (c)    Acute bronchopneumonia;

      (d)    Massive aspiration of meconium;

      (e)    Loss of enjoyment of life;

      (f)    Pain and suffering;

      (g)    Loss of social security and income;

      (h)    Loss of wages; and

      (i)    Emotional distress and anxiety.

## COUNT I - Professional Negligence

***Carissa Peronis, Administratrix of the Estate of Kendall Peronis, Deceased, and Matthew Fritzius***
***vs.***
***Kevin C. Dumpe, M.D., Primary Health Network – Beaver Falls Primary Care***
***and Valley Medical Facilities, Inc. t/d/b/a Heritage Valley Beaver***

### SURVIVAL ACTION

87.     The foregoing paragraphs are incorporated herein by reference as though fully set forth below, at length.

88.     Plaintiffs bring this Survival Action under 20 Pa. C.S.A. § 3373 and 42 Pa. C.S.A. § 8302.

89.     The Defendants' agent Dr. Dumpe, his agents, ostensible agents, servants and/or employees, were negligent generally as described above and in the following particulars:

(a)     In failing to timely and properly recognize the signs of fetal distress and/or act upon those signs;

(b)     In failing to timely and properly recognize and/or act upon non-reassuring and/or abnormal fetal heart tones;

(c)     In failing to timely and properly recognize and/or act upon a category 3 fetal monitor tracing and/or recurrent variable decelerations;

(d)     In failing to timely and properly recognize and/or act upon the Mom's elevated temperature, ruptured membranes and/or presence of meconium;

(e)     In failing to timely and properly recognize and/or act upon the Mom's small stature and body habitus;

(f)     In failing to timely and properly assess and/or act upon the size, weight, position and/or stature of Mom and the fetus;

(g)     In failing to anticipate a difficult labor and/or delivery in a proper and timely fashion;

(h)     In failing to anticipate complications of labor and delivery in a proper and timely fashion;

(i)     In failing to timely and properly recognize and/or act upon the signs and symptoms of fetal compromise, fetal distress and/or  fetal hypoxia;

(j)     In failing to properly examine and monitor Mom and the fetus in an adequately frequent and timely manner;

(k)     In failing to properly review the fetal monitor strips in an adequately frequent and timely manner;

(l)     In leaving Mom and fetus unattended during labor;

(m)    In failing to recognize the need for a C-Section in a proper and timely fashion;

(n)     In failing to perform a C-Section in a proper and timely fashion;

(o)     In failing to timely deliver Decedent in a proper fashion;

(p)     In failing to properly manage and/or oversee the induction of labor in a proper and timely manner;

(q)     In failing to properly follow hospital or practice policies;

(r)     In failing to timely and properly direct and/or instruct the nurses to notify a physician about the fetal heart rates and/or the ongoing condition of the Mom or fetus at adequate and/or appropriately frequent intervals;

(s)     In failing to timely and properly recognize the significance of and/or act upon the information communicated to him by the nurses;

(t)     In allowing and permitting the Mom to push for a prolonged time period;

(u)     In improperly utilizing a vacuum during delivery;

(v)     In allowing and/or permitting the fetal head to become impacted into the pelvis and/or the baby to incur head trauma and compression;

(w)     In failing to appreciate the urgency of the situation;

(x)     In failing to recognize, act upon, manage and/or handle the meconium fluid encountered during labor and/or delivery;

(y)     In failing to timely and properly notify, consult or call in a pediatrician to be present at delivery;

(z)     In failing to timely and properly notify, consult or call in a pediatrician regarding Kendall's condition and/or to examine Kendall shortly after delivery;

(aa)    In failing to anticipate the need for and/or have competent and experienced  health care providers available to examine and/or manage the care of Kendall at or shortly after delivery in a proper and timely fashion;

(bb)    In failing to timely and properly manage Kendall's condition following delivery;

(cc)    In failing to timely and properly manage the suctioning Kendall following delivery;

(dd)    In failing to timely and properly manage, prevent and/or minimize Kendall's aspiration of meconium;

(ee)    In failing to recognize, act upon and/or manage Kendall's airway, respiratory condition and/or respiratory distress;

(ff)    In failing to ensure that Kendall was transferred, in timely and proper manner, to the nursery or NICU after delivery;

(gg)   In failing to obtain cord blood gasses to allow for the evaluation and treatment of Kendall's condition; and

(hh)   In failing to adequately supervise, evaluate, monitor and/or oversee the residents, physician, nurses, nurse practitioners, physician assistants, and/or all other health care providers rendering care to the Mom, her fetus and/or Kendall.

90.    The negligence of the Defendants' agents, including Dr. Dumpe, as described herein, was the "legal cause" of the injuries and damages as described herein.

91.    The negligence of the Defendants' agents, including Dr. Dumpe, as described herein, increased the risk of the injuries and damages as described herein.

92.    As a direct and proximate result of the negligence the Defendants' agents, including Dr. Dumpe, as described herein, Plaintiff's Decedent suffered the within described injuries and these Defendants are liable for said injuries and damages.

93.    As a direct and proximate result of the negligence of the Defendants' agents, including Dr. Dumpe, as described herein, the within described injuries and damages were incurred and these Defendants are liable for the within described injuries and damages, and the following:

(a)   Decedent's pain and suffering;

(b)   Decedent's loss of enjoyment of life;

(c)   Decedent's lost wages;

(d)   Decedent's total estimated future earning power less his estimated  cost  of personal maintenance;

(e)   Decedent's loss of retirement and Social Security income;

(f)   Decedent's other financial losses suffered as a result of his death;    and

(g)   Any other damages allowed under the Survival Act.

94.     Defendant Primary Care is vicariously liable for the negligent acts and omissions of its agent, ostensible agent, servant and/or employee Dr. Dumpe as described herein.

95.     Defendant Hospital is vicariously liable for the negligent acts and omissions of its agent, servant and/or employee Defendant Dr. Dumpe as described herein.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants jointly, severally, and/or jointly and severally, in an amount in excess of the jurisdictional limits of compulsory arbitration, excluding costs and interest.

**JURY TRIAL DEMANDED**

**COUNT II – Professional Negligence**

*Carissa Peronis, Administratrix of the Estate of Kendall Peronis, Deceased, and Matthew Fritzius*
*vs.*
*Kevin C. Dumpe, M.D., Primary Health Network – Beaver Falls Primary Care*
*and Valley Medical Facilities, Inc. t/d/b/a Heritage Valley Beaver*

**WRONGFUL DEATH ACTION**

96.     The foregoing paragraphs are incorporated herein by reference as though fully set forth below at length.

97.     Plaintiffs bring this Wrongful Death Action pursuant to the Pennsylvania Wrongful Death Act 42 Pa.C.S.A. § 8301 and Pa. R.C.P. § 2202(a).

98.     As a direct and proximate result of the negligence of the Defendants' agent Dr. Dumpe, his agents, ostensible agents, servants and/or employees, as described herein, the Wrongful Death Beneficiaries suffered and Defendants are liable for the within described injuries and damages, and the following:

(a)     Funeral expenses for the Decedent;

(b)     Expenses for Administration related to Decedent's injuries;

    (c)     Medical and hospital expenses;

    (d)     Loss of support; and

    (e)     Such other damages as are permissible in a Wrongful Death Action.

99.    Defendant Primary Care is vicariously liable for the negligent acts and omissions of its agent, ostensible agent, servant and/or employee Dr. Dumpe as described herein.

100.    Defendant Hospital is vicariously liable for the negligent acts and omissions of its agent, servant and/or employee Defendant Dr. Dumpe as described herein.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants, jointly, severally, and/or jointly and severally, in an amount in excess of the jurisdictional limits of compulsory arbitration, excluding costs and interest.

**JURY TRIAL DEMANDED**

## <u>COUNT III -Professional Negligence</u>

*Carissa Peronis, Administratrix of the Estate of Kendall Peronis, Deceased, and Matthew Fritzius*
*vs.*
*Hilary Jones, M.D., Valley Medical Facilities, Inc. t/d/b/a/ Heritage Valley Pediatrics, Inc.,  Valley Medical Facilities, Inc. t/d/b/a Heritage Valley Beaver*

### SURVIVAL ACTION

101.    The foregoing paragraphs are incorporated herein by reference as though fully set forth herein.

102.    Plaintiffs bring this Survival Action under 20 Pa.C.S.A. §3373 and 42 Pa.C.S.A. §8302.

103.    The Defendants' agent Dr. Jones, her agents, ostensible agents, servants and/or employees, were negligent generally as described above and in the following particulars:

(a)     In failing to respond to notifications and messages regarding Kendall's condition in a timely and proper fashion;

(b)     In allowing, permitting and/or causing a delay in the initial examination of Kendall after her birth;

(c)     In failing to be present and/or have a pediatrician present at delivery;

(d)     In failing to be present and/or have a pediatrician present shortly after delivery;

(e)     In failing to ensure that Kendall was initially examined after birth by a competent and experienced physician in a timely and proper fashion;

(f)     In failing to timely and properly manage, handle, and/or treat Kendall's respiratory distress;

(g)     In failing to have a pediatric physician on call and/or available to examine Kendall in a proper and timely fashion;

(h)     In failing to have a pediatrician physician on call and/or available to attend difficult deliveries;

(i)     In failing to notify and/or ensure the presence of pediatrician physician at delivery and/or to examine Kendall at or shortly following delivery;

(j)     In failing to recognize and/or act upon the respiratory distress and presence of meconium in a timely and proper fashion;

(k)     In failing to recognize and/or act upon the likelihood of meconium aspiration;

(l)     In failing to follow proper hospital and/ practice policies;

(m)     In failing to arrange for earlier transfer to a facility capable of managing Kendall's care;

(n)     In leaving Kendall unattended post-delivery;

(o)     In failing to obtain cord blood gasses or neonatal blood gasses in a proper and timely fashion:

(p)     In permitting, causing and/or allowing a delay in transfer or admitting Kendall to the nursery or NICU;

(q)     In permitting, causing and/or allowing a delay in diagnosing and treating the conditions of this newly born infant;

(r)     In failing to intubate, provide IV fluids, provide antibiotics and/or provide necessary supportive care in a timely and proper fashion;

(s)     In failing to properly recognize and treat neonatal respiratory distress in a proper and timely fashion;

(t)     In failing to obtain examinations and/or tests in a proper and timely fashion;

(u)     In failing to acknowledge, anticipate and/or act upon the possibility or likelihood of infection and/or sepsis, and;

(v)     In failing to, in proper and timely fashion, adequately supervise, monitor and/or oversee the residents, physicians, nurses, nurse practitioners, physician assistants, and/or all other health care providers rendering care to Kendall.

104.    The negligence of the Defendants' agents, including Dr. Jones, as described herein, was the "legal cause" of the injuries and damages as described herein.

105.    The negligence of the Defendants' agents, including Dr. Jones, as described herein, increased the risk of the injuries and damages described as herein.

106.    As a direct and proximate result of the negligence the Defendants' agents, including Dr. Jones, as described herein, Plaintiffs' Decedent suffered the within described injuries and these Defendants are liable for said injuries and damages.

107.    As a direct and proximate result of the negligence of the Defendants' agents, including Dr. Jones, as described herein, the within described injuries and damages were incurred and these Defendants are liable for the within described injuries and damages, and the following:

(a)     Decedent's pain and suffering;

(b)     Decedent's loss of enjoyment of life;

(c)     Decedent's lost wages;

(d)     Decedent's total estimated future earning power less his estimated cost of personal maintenance;

(e)     Decedent's loss of retirement and Social Security income;

(f)     Decedent's other financial losses suffered as a result of his death;    and

(g)     Any other damages allowed under the Survival Act.

108.    Defendant HV Pediatrics is vicariously liable for the negligent acts and omissions of its agent, ostensible agent, servant and/or employee Dr. Jones as described herein.

109.    Defendant Hospital is vicariously liable for the negligent acts and omissions of its agent, servant and/or employee Defendant Dr. Jones as described herein.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants jointly, severally, and/or jointly and severally, in an amount in excess of the jurisdictional limits of compulsory arbitration, excluding costs and interest.

**JURY TRIAL DEMANDED**

**COUNT IV – Professional Negligence**

*Carissa Peronis, Administratrix of the Estate of Kendall Peronis, Deceased, and Matthew Fritzius*
*vs.*
*Hilary Jones, M.D., Valley Medical Facilities, Inc. t/d/b/a/ Heritage Valley Pediatrics, Inc.,*
*Valley Medical Facilities, Inc. t/d/b/a Heritage Valley Beaver*

**WRONGFUL DEATH ACTION**

110.    The foregoing paragraphs are incorporated herein by reference as though fully set forth below at length.

111.    Plaintiffs bring this Wrongful Death Action pursuant to the Pennsylvania Wrongful Death Act 42 Pa.C.S.A. § 8301 and Pa. R.C.P. § 2202(a).

112.    As a direct and proximate result of the negligence of the Defendants' agents, including Dr. Jones, as described herein, the Wrongful Death Beneficiaries suffered and Defendants are liable for the within described injuries and damages, and the following:

>  (a)    Funeral expenses for the Decedent;
>
>  (b)    Expenses for Administration related to Decedent's injuries;
>
>  (c)    Medical and hospital expenses;
>
>  (d)    Loss of support; and
>
>  (e)    Such other damages as are permissible in a Wrongful Death Action.

113.    Defendant HV Pediatrics vicariously liable for the negligent acts and omissions of its agent, ostensible agent, servant and/or employee Dr. Jones as described herein.

114.    Defendant Hospital is vicariously liable for the negligent acts and omissions of its agent, servant and/or employee Defendant Dr. Jones as described herein.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants, jointly, severally, and/or jointly and severally, in an amount in excess of the jurisdictional limits of compulsory arbitration, excluding costs and interest.

**JURY TRIAL DEMANDED**


### COUNT V – Professional Negligence

*Carissa Peronis, Administratrix of the Estate of Kendall Peronis, Deceased, and Matthew Fritzius*
*vs.*
*Valley Medical Facilities, Inc. t/d/b/a Heritage Valley Beaver*

### SURVIVAL ACTION

115.    The foregoing paragraphs are incorporated herein by reference as though fully set forth herein.

116.    Plaintiffs bring this Survival Action under 20 Pa.C.S.A. §3373 and 42 Pa.C.S.A. §8302.

117.    Defendant Hospital, by and through its agents, ostensible agent, employees and/or servants, was negligent as follows:

(a)    In failing to timely and properly recognize and/or act upon a category 3 fetal monitor tracing and/or recurrent variable decelerations;

(b)    In failing to timely and properly recognize and/or act upon the Mom elevated temperature, ruptured membranes and/or the presence of meconium;

(c)    In failing to properly examine and monitor the Mom and the fetus in an adequately frequent and timely manner;

(d)    In leaving Mom, the fetus, and/or Kendall unattended during labor, delivery and post-delivery;

(e)    In failing to properly review the fetal monitor strips in an adequately frequent and timely manner;

(f)    In failing to properly follow hospital policies;

(g)    In failing to properly document the findings recorded on the fetal heart tracing;

(h)    In failing to timely and properly alert and/or notify physicians and/or other health care providers of the findings on the fetal heart tracing;

(i)    In failing to properly manage and/or oversee the induction of labor in a proper and timely manner;

(j)    In failing to timely and properly alert and/or notify physicians and/or other health care providers of the non-reassuring fetal heart tracing;

(k)    In failing to timely and properly alert and/or notify physicians and/or other health care providers of signs of fetal distress, fetal compromise and/or fetal hypoxia;

(l)    In failing to timely and properly recognize and/or act upon signs of fetal distress, fetal hypoxia and/or fetal compromise;

(m)    In failing to timely and properly recognize and/or act upon signs of non-reassuring fetal heart tracing;

22

(n)     In failing to insure that timely delivery was performed;

(o)     In failing to anticipate a difficult labor and/or delivery and/or the complications thereof in a proper and/or timely fashion;

(p)     In failing to appreciate the urgency of the situation;

(q)     In failing to timely and properly notify and/or ensure the presence of a pediatrician physician at delivery and/or shortly following delivery so that Kendall would have been examined shortly after delivery;

(r)     In failing to notify other health care providers regarding Kendall's condition in a timely and proper fashion;

(s)     In failing to timely and properly to obtain cord blood gasses and/or neonatal gasses;

(t)     In allowing, permitting and/or causing a delay in Kendall's initial examination by a pediatrician following delivery;

(u)     In failing to anticipate the need for and/or to have a pediatric physician on call and/or available to examine newly born infants in a proper and timely fashion;

(v)     In failing to have a pediatrician physician on call and/or available to attend difficult deliveries;

(w)     In failing to notify and/or ensure the presence of pediatrician physician at delivery and/or to examine Kendall at or shortly following delivery;

(x)     In failing to respond and/or to notifications and/or messages regarding Kendall's conditions in a timely and/or proper fashion;

(y)     In failing to arrange for timely, proper and/or earlier transfer to a facility where proper care could be provided;

(z)     In causing, permitting and/or allowing a delay in a proper and timely transfer of Kendall to a facility where proper care could be provided.

(aa)    In failing to arrange for timely, proper and/or earlier transfer of Kendall to the nursery or the NICU;

(bb)    In failing to timely and properly provide for IV fluids, antibiotics and/or other necessary supportive care;

(cc)    In leaving Kendall unattended;

(dd)   In failing to timely and properly anticipate, recognize, act upon, and/or manage Kendall's airway, respiratory distress, presence of meconium and/or respiratory condition;

(ee)   In failing to timely and properly alert and/or notify the physicians and/or other health care providers  about Kendall's respiratory distress, respiratory compromise, and/or respiratory condition;

(ff)   In failing to timely and properly adequately suction, clear the infant's airway and/or mange or minimize aspiration of meconium;

(gg)   In failing to obtain examinations, and/or testing, in a proper and timely fashion including but not limited to blood work, blood gasses, blood cultures, and/or chest x-ray;

(hh)   In failing to recognize, anticipate and/or act upon the possibly and/or likelihood of infection and/or sepsis following the circumstances of this labor and delivery; and

(ii)   In failing to, in proper and timely fashion, adequately supervise, monitor and/or oversee the residents, physicians, nurses, nurse practitioners, physician assistants, and/or all other health care providers rendering care to the Mom, her fetus and/or Kendall.

118.   The negligence of the Hospital, as described herein, was the "legal cause" of the injuries and damages as described herein.

119.   The negligence of the Hospital, as described herein, increased the risk of the injuries and damages as described herein.

120.   As a direct and proximate result of the negligence the Hospital, as described herein, Plaintiffs' Decedent suffered the within described injuries and these Defendants are liable for said injuries and damages.

121.   As a direct and proximate result of the negligence of the Hospital, as described herein, the within described injuries and damages were incurred and these Defendants are liable for the within described injuries and damages, and the following:

(a)      Decedent's pain and suffering;

(b)     Decedent's loss of enjoyment of life;

(c)     Decedent's lost wages;

(d)     Decedent's total estimated future earning power less his estimated   cost   of personal maintenance;

(e)     Decedent's loss of retirement and Social Security income;

(f)     Decedent's other financial losses suffered as a result of his death;     and

(g)     Any other damages allowed under the Survival Act.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants jointly, severally, and/or jointly and severally, in an amount in excess of the jurisdictional limits of compulsory arbitration, excluding costs and interest.

**JURY TRIAL DEMANDED**


**COUNT VI – Professional Negligence**

*Carissa Peronis, Administratrix of the Estate of Kendall Peronis, Deceased, and Matthew Fritzius*
*vs.*
*Valley Medical Facilities, Inc. t/d/b/a/ Heritage Valley Beaver*

**WRONGFUL DEATH ACTION**

122.     The foregoing paragraphs are incorporated herein by reference as though fully set forth below at length.

123.     Plaintiffs bring this Wrongful Death Action pursuant to the Pennsylvania Wrongful Death Act 42 Pa.C.S.A. § 8301 and Pa. R.C.P. § 2202(a).

124.     As a direct and proximate result of the negligence of Defendant Hospital, as described herein, the Wrongful Death Beneficiaries suffered and Defendants are liable for the within described injuries and damages, and the following:

(a)     Funeral expenses for the Decedent;

(b)     Expenses for Administration related to Decedent's injuries;

(c)     Medical and hospital expenses;

(d)     Loss of support; and

(e)     Such other damages as are permissible in a Wrongful Death Action.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants, jointly, severally, and/or jointly and severally, in an amount in excess of the jurisdictional limits of compulsory arbitration, excluding costs and interest.

**JURY TRIAL DEMANDED**

## COUNT VII –Corporate Negligence

*Carissa Peronis, Administratrix of the Estate of Kendall Peronis, Deceased, and Matthew Fritzius*
*vs.*
*Valley Medical Facilities, Inc. t/d/b/a/ Heritage Valley Beaver*

### SURVIVAL ACTION

125.    The foregoing paragraphs are incorporated herein by reference as though fully set forth below, at length.

126.    Defendant Hospital was negligent in the following particulars:

(a)     In failing to ensure that the physicians, medical staff, nursing staff, and/or other health care providers were properly trained to recognize the signs and symptoms of non-reassuring fetal heart tones and/or fetal distress;

(b)     In failing to ensure that their health care providers were properly trained and adequately staffed to promptly alert the physicians of non-reassuring fetal heart tones;

(c)     In failing to ensure that the health care providers were properly trained and adequately staffed to take timely actions upon discovery of non-reassuring fetal heart tones and/or fetal distress;

(d)     In failing to select, retain, employ, consult and/or grant privileges to only competent, qualified and experienced nursing staff, medical staff and/or other health care providers;

(e)     In failing to ensure that its health care providers were properly trained to perform deliveries and/or C-Section deliveries, in a proper and timely fashion;

(f)     In failing to ensure that its health care providers were properly trained to confirm the fetal size, the Mom's stature and/or the fetal condition prior to delivery and/or before attempting vacuum extraction;

(g)     In failing to ensure that its health care providers were properly trained how to document in the medical records;

(h)     In failing to ensure that its health care providers were properly trained how to appropriately interpret, document and/or act upon the findings of fetal monitor strip tracings;

(i)     In failing to properly train, supervise and/or oversee the health care providers in promptly and accurately communicating patients' status to the treating physicians and/or other health care providers;

(j)     In failing to have adequate health care providers to monitor patients for potential emergencies,

(k)     In failing to have proper policies in place to ensure that the Mom, her fetus and/or Kendall were tested, examined, diagnosed and/or treated in an appropriate, adequate, sufficient and/or timely manner;

(l)     In failing to have adequate guidelines in place regarding neonatal respiratory distress, meconium aspiration, sepsis, infection, vacuum delivery, suctioning of a newborn, transfer of an  infant in distress, ensuring a pediatrician can be present at delivery and/or providing an appropriate care during labor, delivery and immediate post-delivery to Mom, fetus and the newly born infant;

(m)     In failing to have proper policies in place to ensure that Kendall was referred to the proper consults and/or specialists in a proper and timely fashion;

(n)     In failing to have in place the proper polices, protocols and/or trained health care providers to ensure that a pediatrician was notified to be and/or was present at delivery;

(o)     In failing to have proper policies in place to ensure that the Mom's delivery occurred in a proper and timely manner to avoid fetal

compromise, fetal distress, neonatal respiratory distress, neonatal respiratory conditions and/or the presence of meconium.

(p)     In failing to have proper policies in place to ensure that the signs, symptoms, and conditions of the Mom and her fetus as well as the fetal monitor strip findings were properly recognized and accurately relayed, communicated, reported and/or acted upon in a proper, timely and prompt fashion;

(q)     In failing to have proper policies in place to ensure that fetal distress or compromise was promptly and appropriately tested, diagnosed, evaluated and treated;

(r)     In failing to have competent physicians, nurses, residents, and/or other health care providers on staff,

(s)     In failing to have appropriate policies in effect to ensure prompt and effective communication between health care providers,

(t)     In failing to delegate responsibilities of the examination, observation and/or monitoring of the Mom and/or Decedent to individuals qualified, skilled and/or competent to appreciate the history, conditions, signs, symptoms, findings, and/or test results of the Mom, the fetus and/or the newly born infant; and

(u)     In failing to, in proper and timely fashion, adequately supervise, evaluate, monitor and/or oversee the staff, residents, fellows, students, physicians, consults, obstetric and pediatric department personnel, nurses, nurse practitioners, physician assistants, technicians, and/or all other health care providers rendering care to the Mom, fetus and/or Kendall.

127.     The negligence of the Hospital, as described herein, was the "legal cause" of the injuries and damages as described herein.

128.     The negligence of the Hospital, as described herein, increased the risk of the injuries and damages as described herein.

129.     As a direct and proximate result of the negligence the Hospital, as described herein, Plaintiffs' Decedent suffered the within described injuries and these Defendants are liable for said injuries and damages.

130.    As a direct and proximate result of the negligence of the Hospital, as described herein, the within described injuries and damages were incurred and these Defendants are liable for the within described injuries and damages, and the following:

      (a)    Decedent's pain and suffering;

      (b)    Decedent's loss of enjoyment of life;

      (c)    Decedent's lost wages;

      (d)    Decedent's total estimated future earning power less his estimated  cost  of personal maintenance;

      (e)    Decedent's loss of retirement and Social Security income;

      (f)    Decedent's other financial losses suffered as a result of his death;    and

      (g)    Any other damages allowed under the Survival Act.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants jointly, severally, and/or jointly and severally, in an amount in excess of the jurisdictional limits of compulsory arbitration, excluding costs and interest.

**JURY TRIAL DEMANDED**


## COUNT VIII –Corporate Negligence

*Carissa Peronis, Administratrix of the Estate of Kendall Peronis, Deceased, and Matthew Fritzius*
*vs.*
*Valley Medical Facilities, Inc. t/d/b/a Heritage Valley Beaver*

**WRONGFUL DEATH ACTION**

131.    The foregoing paragraphs are incorporated herein by reference as though fully set forth below at length.

132.    Plaintiffs bring this Wrongful Death Action pursuant to the Pennsylvania Wrongful Death Act 42 Pa.C.S.A. § 8301 and Pa. R.C.P. § 2202(a).

133.   As a direct and proximate result of the negligence of Defendant Hospital, as described herein, the Wrongful Death Beneficiaries suffered and Defendants are liable for the within described injuries and damages, and the following:

(a)   Funeral expenses for the Decedent;

(b)   Expenses for Administration related to Decedent's injuries;

(c)   Medical and hospital expenses;

(d)   Loss of support; and

(e)   Such other damages as are permissible in a Wrongful Death Action.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants, jointly, severally, and/or jointly and severally, in an amount in excess of the jurisdictional limits of compulsory arbitration, excluding costs and interest.

Respectfully submitted,

DATE:  September 8, 2016          **HARRY S. COHEN & ASSOCIATES, P.C.**

By: _____*/s/ Douglas L. Price*_____
Douglas L. Price, Esquire
Harry S. Cohen, Esquire
Attorney for Plaintiff
Harry S. Cohen & Associates, P.C.
Two Chatham Center, Suite 985
Pittsburgh, PA  15219
(412) 281-3000
Email: hcohen@medmal1.com
Pennsylvania Bar No. 30682